[Cite as *Cleveland v. Kalish*, 2018-Ohio-682.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105557**

---

**CITY OF CLEVELAND**

PLAINTIFF-APPELLANT

vs.

**TODD C. KALISH**

DEFENDANT-APPELLEE

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2016 TRC 033340

**BEFORE:** Keough, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** February 22, 2018

**ATTORNEYS FOR APPELLANT**

Barbara Langhenry
Director of Law
Kimberly G. Barnett-Mills
Chief Prosecutor
Marco A. Tanudra
Assistant City Prosecutor
City of Cleveland Law Department
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Leslie Johns
Hector G. Martinez
The Martinez Firm
4230 S.R. 306, Suite 240
Willoughby, Ohio 44094


KATHLEEN ANN KEOUGH, P.J.:

{¶1} The city of Cleveland (the "city") appeals from the judgment of the Cleveland Municipal Court granting the motion to suppress of defendant-appellee Todd Kalish ("Kalish"). For the reasons that follow, we reverse and remand.

## I.  Facts and Procedural Background

{¶2} Kalish was charged with violations of R.C. 4511.19(A), operating a motor vehicle while under the influence of alcohol, and R.C. 4511.33, driving in marked lanes. He pleaded not guilty and filed a motion to suppress the evidence against him, arguing that the arresting officer did not have a reasonable suspicion to make the initial stop of his vehicle, lacked a reasonable and articulable suspicion sufficient to extend the stop to administer field sobriety

tests, did not administer the tests in compliance with the National Highway Traffic Safety Administration guidelines, and lacked probable cause to arrest him without a warrant.

{¶3} The trial court subsequently held a hearing on the suppression motion. Ohio State Patrol Officer Rick Suda testified that he was a recent graduate of the Ohio State Highway Patrol academy and that although during his training he had observed stops of motorists suspected of driving while under the influence of alcohol or drugs, this was the first stop he initiated. Suda testified that on October 14, 2016, at approximately 11:45 p.m., as Kalish was operating his vehicle westbound on I-90, he observed Kalish's vehicle twice cross over the white lane markers and then back into his own lane again without using any turn signals. Suda testified that traffic was heavy at the time because a Cleveland Indians game had recently ended, but Kalish was not speeding. Suda said that when he activated his lights to initiate a traffic stop, Kalish pulled over and stopped his vehicle without any problem.

{¶4} Suda and Ohio Patrol Officer Anthony Hosey, who was riding with Suda, approached the driver's side of Kalish's vehicle. Only Kalish was in the vehicle; there were no passengers. Suda testified that he detected an odor of alcohol coming from the vehicle. He advised Kalish of the reason for the stop and then asked Kalish for his driver's license and registration. Suda acknowledged that his report contained no observation that Kalish had any difficulty in providing his license and registration to him.

{¶5} Suda testified that he observed that Kalish's face was flushed and his eyes were bloodshot, so he asked Kalish to exit his vehicle to perform field sobriety tests. On cross-examination, Suda admitted that he did not know if Kalish's face is normally flushed, and that a flushed face is not necessarily indicative of alcohol consumption. He further admitted that

he did not know if Kalish's eyes are normally bloodshot and that he did not ask Kalish how much sleep he had had the night before.

{¶6} Suda admitted that Kalish had no difficulty exiting his vehicle nor in walking back to the driver's side door of the patrol car. Suda also acknowledged that he did not ask Kalish any questions about his drinking before he asked him to exit his vehicle. He said that as Kalish was walking to the patrol car, he asked him if he had had any alcohol that night, and Kalish responded, "yeah, at the Indians game." Suda admitted that he did not ask Kalish how many drinks he had consumed, and Kalish did not tell him. Suda then advised Kalish that he was "going to run a few tests."

{¶7} Officer Hosey testified that he then read Kalish his *Miranda* rights. Hosey testified that Kalish responded appropriately to the questions the officers asked him, and that he did not detect any problems with Kalish's speech. After Suda administered the field sobriety tests, Kalish was arrested for operating a vehicle while under the influence of alcohol.

{¶8} Dashcam video from Suda's cruiser showing him following Kalish's vehicle and administering the field sobriety tests was shown during the suppression hearing. Subsequently, the court announced its ruling from the bench. After noting that it had carefully reviewed the dashcam video again after the hearing, the trial court granted the motion to suppress. The court found that the initial traffic stop of Kalish's vehicle was supported by traffic violations demonstrated on the video. The video showed that Kalish did not use his turn signal to change lanes, and crossed over lane lines several times. Accordingly, the court found that Officer Suda had probable cause to initiate a traffic stop.

{¶9} Nevertheless, the court found that Officer Suda did not have a reasonable suspicion supported by articulable facts sufficient to extend the stop to administer field sobriety tests. The

court found that although it was clear that Kalish was trying to pass other vehicles before he was stopped, he was moving with the flow of traffic and not speeding. Further, the court found that when Officer Suda turned his lights on to initiate the stop, Kalish promptly stopped without any difficulty in maneuvering his vehicle to the side of the road. The court found that Kalish did not demonstrate any fumbling in retrieving his driver's license and registration, and had no difficulty exiting his vehicle or walking toward the patrol car. The court further found that Kalish's speech was not slurred, he was not slow to respond to the officer's questions, and he did not provide incorrect information or change his answers to the questions asked of him.

{¶10} With respect to the odor of alcohol detected by Suda, the court found that Suda testified that the odor came from within the vehicle, not Kalish, and that the officer did not detect any other odors, such as alcohol on Kalish's breath or marijuana. The court also noted that other than the odor of alcohol, there were no other indicia of intoxication, such as containers of alcohol in the car, soiled clothing, slurred speech, or fumbling by Kalish.

{¶11} The court further found that Kalish did not demonstrate any behavior indicative of intoxication when he got out of his vehicle. Specifically, the court found that he was not angry, he did not leave his car door open, he did not leave the vehicle in gear, and he did not lean against the vehicle or keep his hands on the vehicle to help with balance — he simply got out of his car and walked back to the patrol car.

{¶12} With respect to Suda's observation that Kalish's flushed face was indicative of intoxication, the judge noted that she had observed that Kalish's face was flushed during the suppression hearing, and that it was flushed again as she announced her ruling. She found that "his face is flushed the entire time" and "is his normal skin tone," so his flushed face was not indicative of intoxication on the night he was stopped. With respect to Kalish's bloodshot eyes,

the court found that before administering the field sobriety tests, Suda did not ask any questions regarding how much sleep Kalish had the night before, how tired he was, or what his eyes normally look like.

{¶13} The court also found that Suda did not administer any pre-exit tests, such as the alphabet or finger count tests, before he asked Kalish to exit his vehicle, and that Suda did not establish how many drinks Kalish had consumed or when he last had a drink before he administered the tests.

{¶14} In light of these findings, the trial court found that "because of the lack of reason to pull him out of the car, * * * the scope of the stop was exceeded," and it suppressed all evidence obtained after the stop. This appeal followed.

## II. Law and Analysis

{¶15} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993). Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶ 19.

{¶16} On appeal, the city argues that the trial court erred in granting the motion to suppress because Officer Suda had a reasonable and articulable suspicion that Kalish was

intoxicated sufficient to subject him to the administration of field sobriety tests. Specifically, the city contends that the lateness of the hour, Kalish's admission that he had "been at an event where alcoholic beverage is generally consumed," the odor of alcohol, Kalish's flushed face and bloodshot eyes, and his admission that he had consumed alcohol, under the totality of the circumstances, were indicia of intoxication sufficient to justify expanding the scope of the traffic stop to administer field sobriety tests.

{¶17} To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶18} It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. Specific to this case, "[w]hen an officer observes a vehicle drifting back and forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 16.[1]

---

[1] R.C. 4511.33, regarding rules for driving in marked lanes, states that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic * * *, a vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the

**{¶19}** Once a driver has been lawfully stopped, however, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998); *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 Ohio App. LEXIS 1151, *7 (Mar. 24, 2000). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Dedejczyk* at *id.*, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18.

**{¶20}** Here, the trial court found that Suda properly stopped Kalish for the purpose of issuing a citation for a lane violation and, therefore, the initial traffic stop was valid. Although Kalish challenged the initial stop in his motion to suppress, he does not do so on appeal, thereby abandoning this argument.

**{¶21}** Nevertheless, as noted above, the validity of the initial stop alone would not give Suda the right to subject Kalish to the further intrusion of field sobriety tests. "[A]n analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the officer's reasonable and articulable suspicion at that point." *Spillers* at *id.*, citing *State v. Smethurst*, 2d Dist. Clark No. 94-CA-24, 1995 Ohio App. LEXIS 900 *8-9 (Mar. 8, 1995). Thus, we must decide whether, under the totality of the circumstances, Suda had a reasonable and

---

driver has first ascertained that such movement can be made with safety."

articulable suspicion that Kalish was intoxicated sufficient to justify the administration of field sobriety tests.

{¶22} In *Evans*, *supra*, the court identified factors that courts may consider to determine whether, under the totality of the circumstances, an officer had reasonable suspicion to administer field sobriety tests: (1) the time of day; (2) the location of the stop; (3) any indicia of erratic driving before the stop; (4) whether there was a report the driver might be intoxicated; (5) the condition of the suspect's eyes; (6) an impaired ability to speak; (7) an odor of alcohol coming from the car, or on the driver's breath or person; (8) the intensity of that odor; (9) the suspect's demeanor; (10) any actions by the driver after the stop that might indicate a lack of coordination; and (11) the driver's admission of alcohol consumption. *Dedejczyk,* 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, at ¶ 30, citing *Evans,* 127 Ohio App.3d 56, 63, 711 N.E.2d 761 at fn. 2. No factor is dispositive and the list is not exhaustive. *Id.*

{¶23} Suda testified that he decided to administer field sobriety tests because he observed two lane violations, he detected an odor of alcohol in the vehicle, and Kalish's eyes were bloodshot and his face was flushed. Contrary to the trial court, we conclude that under the totality of the circumstances, these facts created a reasonable suspicion that Kalish was intoxicated sufficient to justify the administration of field sobriety tests.

{¶24} First, although nominal lane violations combined with a slight odor of alcohol are generally insufficient by themselves to trigger a reasonable suspicion of a driving while intoxicated, *Spillers*, 2d Dist. Darke No. 1504, 2000 Ohio App. LEXIS 1151, Kalish's lane violations were not de minimis. Suda testified, and the video confirmed, that Kalish drifted well over the lane lines several times and then back into his own lane, and changed lanes several times without using his turn signal.

**{¶25}** Further, Suda testified that upon approaching Kalish's vehicle after he stopped on the side of the road, he smelled an odor of alcohol in the vehicle. Although he did not characterize the odor as particularly strong and did not say the odor was on Kalish's breath, the smell could only have come from Kalish; there were no other passengers in the vehicle. Moreover, the odor of alcohol was coupled with Kalish's flushed face and bloodshot eyes, as well as the lateness of the hour. Although the trial court would require that Suda ask Kalish whether his face is normally flushed and his eyes usually bloodshot, we decline to impose such a requirement. Erratic driving at 11:45 p.m., coupled with an odor of alcohol, a flushed face, and bloodshot eyes would indicate to a "reasonable and prudent police officer" that an individual may be driving while intoxicated.

**{¶26}** Furthermore, when he got out of his vehicle, Kalish admitted that he had been drinking earlier that evening. It is well-established that an officer can ask a person to exit a vehicle during a lawful traffic stop without having reasonable suspicion of any further criminal activity. This is known as a *Mimms* order. *See Pennsylvania v. Mimms* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *see also State v. Evans,* 67 Ohio St.3d 405, 407-408, 618 N.E.2d 162 (1993); *Parma Hts. v. Owca*, 8th Dist. Cuyahoga No. 103606, 2017-Ohio-179, ¶ 23 (*"Mimms* dispenses with the requirement that the officer possess reasonable suspicion of criminal activity before he orders the driver out of an already lawfully stopped vehicle.").[2]

---

[2]Thus, the trial court's reasoning that the scope of the stop was unlawfully exceeded because the officer had no reason to ask Kalish to exit his car, despite a

**{¶27}** If reasonable suspicion thereafter arises from acts of the motorist while alighting or the officer's better observation of the motorist, an officer may proceed with other investigatory steps that require reasonable suspicion (such as the pat-down in *Mimms* or field sobriety tests). *State v. Koczwara*, 7th Dist. Mahoning No. 13 MA 149, 2014-Ohio-1946, ¶ 19, citing *Mimms* at 111-112. "Thus, events occurring upon exiting (before any field sobriety testing) are permissibly considered in the evaluation of whether there exists reasonable suspicion to administer field sobriety tests." *Koczwara* at ¶ 24, citing *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521 (where there was a proper traffic stop, officer could order driver out for no reason, and driver's instability on exiting car and using door for support could be used in evaluation of whether there was reasonable suspicion for field sobriety tests).

**{¶28}** Here, as he was walking back to the patrol car after exiting his vehicle, Kalish admitted to Suda that he had been drinking at the Indians game earlier that evening. Although he did not stumble or walk erratically, Kalish's admission, made after he exited his vehicle, can be considered in determining whether Suda had a reasonable suspicion to administer field sobriety tests.

**{¶29}** "Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *State v. Buchanan*, 9th Dist. Medina No. 13CA0041-M, 2014-Ohio-3283, ¶ 8, quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, although Kalish did not exhibit overwhelming signs of intoxication, his admission to drinking, coupled with the lane violations, his flushed face and bloodshot eyes, the odor of alcohol in his vehicle,

valid traffic stop, was incorrect. Because the traffic stop was valid, Officer Suda could properly ask Kalish to exit his vehicle.

and the reasonable inferences from those facts, gave Suda a reasonable suspicion, based on his training and the totality of the circumstances, that Kalish was driving while intoxicated sufficient to extend the traffic stop and administer field sobriety tests.[3] Accordingly, although it is admittedly a close call, the trial court erred in granting the motion to suppress.

**{¶30}** Judgment reversed; remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS WITH SEPARATE OPINION


LARRY A. JONES, SR., J., DISSENTING:

**{¶31}** Respectfully, I dissent. As the majority notes, at a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact. *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, 860 N.E.2d 1002, ¶ 1. As such, we are bound to accept those facts as true if they are supported by competent, credible evidence. *Id.* Applying

---

[3]We reject the city's alarming assertion, however, that admitting to *merely being present* at an event where alcohol is generally consumed is a factor to be considered in the totality of the circumstances analysis.

that deferential standard, I would find that the trial court's findings here are supported by competent, credible evidence and, therefore, would affirm its judgment.

{¶32} After viewing the dash-camera video of the incident, the trial court found that Kalish had committed a "moving traffic violation" and, therefore, that the stop was permissible. The court noted, however, that although Kalish had violated traffic laws, his driving did not indicate to the court that he was impaired. Rather, the court found that it was "pretty clear he was trying to pass other vehicles[,] but he was never necessarily speeding." The court further found that his response to the officer activating the police lights to stop him was "prompt" and he was "appropriate" and "very safe in pulling over."

{¶33} The court noted that once Kalish pulled over, there was "no difficulty with the motor vehicle controls, there was no fumbling for driver's license or registration" and his speech was not slurred, he was not slow to respond, and he did not provide incorrect information or change his answer.

{¶34} Officer Suda testified that he could smell alcoholic beverage coming from inside the car, Kalish's face was flushed, and his eyes were bloodshot. Based on these observations, Suda "decided to investigate further by [having Kalish step] out of the car to run standardized field sobriety tests." The trial court acknowledged the officer's testimony about the odor of alcohol coming from the car, and Kalish's bloodshot eyes and flushed skin tone, but did not find it justified the administration of the tests.

{¶35} In regard to the odor of alcohol, the court noted that the officer did not testify that he smelled the odor on Kalish's breath or coming from Kalish's person; rather, the officer just testified that it was coming from the vehicle. While I agree with the majority that, because

Kalish was the sole occupant of the vehicle, the smell necessarily had to be attributed to him, I note that there was no testimony about the intensity of the odor.

{¶36} It is entirely plausible that consuming one alcoholic beverage could cause a person to "smell of alcohol." Thus, it has been held, as the majority notes, that instances where a driver makes de minimis traffic violations (as the trial court here found was the case) and has a slight odor of alcoholic beverage on his or her person, do not give rise to a reasonable and articulable suspicion that the driver is intoxicated. *See State v. Spillers*, 2d Dist. Darke No. 1504, 2000 Ohio App. LEXIS 1151, 8 (Mar. 24, 2000). Thus, without more testimony about the intensity of the odor coming from inside Kalish's vehicle, I would not usurp the trial court's finding.

{¶37} Regarding his flushed skin tone, the trial court noted that it viewed Kalish at both the suppression hearing and the hearing announcing its decision, and noted that "his face is flushed the entire time. I think that is his normal skin tone and I don't find that to be a clue." Given that the trial court had the opportunity, on at least two occasions to view Kalish, I would defer to the trial court's finding on this point.

{¶38} Thus, the remaining "clue" that Kalish may have been intoxicated was his bloodshot eyes. The trial court noted that the officer did not ask Kalish whether he was tired or what his eyes normally look like. The majority states that it declines to impose such a requirement for OVI traffic encounters. I agree that it is not necessary for the police to make such an inquiry in those instances, but given the totality of the circumstances of this case, I would again defer to the court's decision.

{¶39} Moreover, I would not find that the "*Mimms* order" justified administration of the field sobriety tests. Although an officer can order a person to exit a vehicle during a lawful

traffic stop without having reasonable suspicion of any further criminal activity under *Mimms*, the trial court found, and I would defer to that finding, that there was nothing suspicious about Kalish's behavior once he was out of his vehicle. Specifically, the court noted he did not have trouble getting out of his vehicle, there was "no swaying or unsteady balance problem, he never leaned on the vehicle or any other object." The court further noted:

> regarding the suspect's actions during the exit sequence, there's nothing unusual about that, no angry initial reactions, no inability to follow instructions, he didn't leave his vehicle door open, he didn't leave the vehicle in gear; he didn't climb out. He got up. He didn't lean against the vehicle or keep his hands on the vehicle for balance. There were no other unusual reactions.

{¶40} And even though Kalish, once out of his vehicle, admitted that he had been at a Cleveland Indians game and had consumed alcohol there, Officer Suda testified that it was his intention to subject Kalish to field sobriety tests when he ordered him out his vehicle, *before* Kalish even told him he had drank alcohol at the Indians game.

{¶41} Thus, in light of the above, although I believe the stop was lawful, I would defer to the trial court's findings that the police exceeded the scope of the stop when they subjected Kalish to field sobriety tests because the findings are supported by some competent, credible evidence. I therefore dissent and would affirm the trial court's judgment.