[Cite as *State v. Taylor*, 2026-Ohio-1041.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                 No. 115154

    v.                             :

KENNETH KIMBROUGH                        :
TAYLOR, JR.,

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-698621-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carla B. Neuhauser, Assistant Prosecuting Attorney, *for appellee.*

Flowers & Grube, Louis E. Grube, and Michael J. Factor, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Kenneth Kimbrough Taylor, Jr. appeals the trial court's order denying his motion to suppress the firearm located on his person

during a traffic stop as evidence. Following a thorough review of the facts and applicable law, we affirm.

## I. Procedural History and Facts

{¶ 2} On January 27, 2025, the Cuyahoga County Grand Jury returned a three-count indictment charging appellant with the following offenses:

> Count 1: having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree, with a weapons forfeiture specification pursuant to R.C. 2941.1417(A);

> Count 2: carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, with a weapons forfeiture specification pursuant to R.C. 2941.1417(A); and

> Count 3: improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), with a weapons forfeiture specification pursuant to R.C. 2941.1417(A).

{¶ 3} At a pretrial held March 5, 2025, the trial court scheduled a suppression hearing for April 1, 2025, even though no motion had yet been filed. Appellant filed his motion to suppress on March 19, 2025. The State filed its brief in opposition on March 31, 2025. The hearing on appellant's motion to suppress proceeded as scheduled on April 1, 2025.

{¶ 4} The traffic stop giving rise to this case occurred at approximately 2:30 p.m. on March 6, 2024. The State's sole witness at the suppression hearing was Ohio State Highway Patrol Trooper Justin Lister. In addition to testimony, the State provided the trial court with body-camera footage of Trooper Lister's interactions with appellant. Trooper Lister testified that the footage fairly and accurately depicted the encounter. (Tr. 44-45.)

{¶ 5} Trooper Lister testified that on the afternoon in question, he observed a vehicle with what appeared to be an illegally dark window tint. He stepped from his patrol car to approach the vehicle. Appellant, who was driving, had partially lowered the driver's-side window. Trooper Lister testified that while the windows of the vehicle were intact, he observed broken window glass in the vehicle itself. He stated that there was "broken glass in the car yet there's no shattered windows currently," which he found "abnormal." (Tr. 18.)

{¶ 6} Appellant handed Trooper Lister an Ohio identification card rather than a driver's license. In addition, Trooper Lister testified that the photo on the identification card "appeared to be a different physical appearance than the driver that was sitting in front of me." (Tr. 18-19.) Appellant did, however, have his phone out, and stated "that he had his driver's license on his phone." (Tr. 16.)

{¶ 7} Trooper Lister continued by explaining his rationale for asking appellant to step out of the vehicle:

> [B]eing that it was an ID card only and the picture difference, the safest way for me to not approach that car again, unknowingly of what's in the vehicle, is to bring the driver out, bring him back to my office. It's common practice. My office meaning the patrol car. And validating what he had said to be, in fact, true, that he has a valid driver's license.

(Tr. 19.)

{¶ 8} Trooper Lister asked appellant to exit the vehicle. Referencing the body-camera footage, he testified that as appellant stepped out "with his left foot, his right arm [was] notably hugged toward his midline as if he's almost holding a football . . . ." (Tr. 22.) According to Trooper Lister's testimony, appellant was

"hinged over at the waist notably forward," and appellant's "right hand [was] almost hidden into his waistline." (Tr. 23.) He further testified: "It's not normal for someone to step out of a car hinged at the waist hugging his waistline with his right hand." (Tr. 23-24.)

{¶ 9} Trooper Lister asked appellant "[i]f he had something in his waistband." (Tr. 24.) The body-camera footage appears to indicate that appellant answered in the negative. Trooper Lister then cuffed appellant, donned protective nitrile gloves, and performed a pat down, which immediately revealed a semi-automatic handgun with a round in the chamber. (Tr. 24-26.)

{¶ 10} In his motion and at the suppression hearing itself, appellant argued that an officer must tailor the scope and duration of a traffic stop to the reason for the stop itself, i.e., "writing the citation, and any expanded investigation unrelated to the traffic violation must be based upon reasonable articulable suspicion." (Appellant's motion to suppress at p. 3.)

{¶ 11} The trial court recessed briefly, then went back on the record and denied appellant's motion to suppress. It stated that even though no citation was given for the window-tint violation, its observation of the body-camera footage "does indicate that the windows were tinted to such a degree that one would have difficulty seeing into the vehicle." (Tr. 58.) It further found Trooper Lister's order for appellant to step out of the vehicle and the pat down lawful under *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), and *State v. Hoskins*, 2002-Ohio-3451, ¶ 14 (8th Dist.).

{¶ 12} Trial remained set for May 7, 2025. Appellant appeared that day and entered a plea of no contest to the indictment. Following a proffer by the State, the trial court found appellant guilty on all three counts, ordered forfeiture of the seized Smith & Wesson 9 mm firearm, and imposed a community-control sanction. This timely appeal followed.[1]

## II. Assignment of Error

{¶ 13} Appellant presents a single assignment of error for our review:

> The trial court erred, and violated defendant-appellant Taylor's constitutional rights, when it denied his motion to suppress evidence found during an illegal search.

{¶ 14} We overrule appellant's sole assignment of error and affirm the trial court's denial of his motion to suppress.

## III. Analysis

### A. Standard of Review

{¶ 15} Relevant to the issue of searches and seizures, this court has stated:

> The Fourth Amendment to the Constitution of the United States and Section 14, Article I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. Evidence obtained by the State in violation of that prohibition must be suppressed from use by the State in its criminal prosecution of the person from whom it was seized.

*State v. Baker*, 2007-Ohio-5450, ¶ 12 (8th Dist.).

---

[1] "A plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a motion to suppress evidence. Crim.R. 12(I)." *State v. Beasley*, 2018-Ohio-16, ¶ 15.

{¶ 16} "An appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Byrd*, 2022-Ohio-4635, ¶ 14 (8th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *Byrd* at ¶ 14, citing *State v. Preztak*, 2009-Ohio-621, ¶ 22 (8th Dist.). We then "independently determine, as a matter of law, whether the applicable legal standard has been satisfied." *State v. Moore*, 2014-Ohio-2979, ¶ 9 (8th Dist.), citing *State v. Jones*, 2014-Ohio-496 (8th Dist.).

{¶ 17} We find no reason to conclude that the testimony of Trooper Lister was not competent or credible, particularly considering the body-camera footage played for the trial court and provided to us with the record on appeal. We further find that the trial court applied the correct legal standard to the facts and appropriately denied appellant's motion to suppress.

## B. The Traffic Stop

{¶ 18} At the trial-court level, appellant suggested the stop was pretextual. He has abandoned that argument on appeal, stating in his brief that he "does not challenge the legitimacy of the original stop" because the trial court made specific findings that there was "reasonable suspicion of an equipment violation." Because the issue was raised below, however, and because appellant still attempts to plant seeds of doubt regarding whether the tint level was actually unlawful, we briefly address the legitimacy of the traffic stop. "As a general rule, the decision to stop an automobile is reasonable where the police have probable cause to believe that a

traffic violation has occurred." *State v. Dansby-East*, 2019-Ohio-2218, ¶ 11 (8th Dist.). As we noted in that very case, "[t]his court has repeatedly held that window tint violations provide probable cause for a traffic stop." *Id.* (collecting cases). An officer may lawfully initiate a traffic stop if "there was at least *a reasonable suspicion* that the windows were illegally tinted." (Emphasis added.) *State v. Bowie*, 2007-Ohio-4297, ¶ 9 (8th Dist.). *See also Richmond Hts. v. Williams*, 1998 Ohio App. LEXIS 5572, *6 (8th Dist. Nov. 25, 1998) (officer "had reasonable suspicion based upon the specific and articulable fact that defendant's windows were excessively tinted"). We find and conclude that the traffic stop for a suspected window-tint violation was not unconstitutional.

## C. The *Mimms* Order

{¶ 19} We likewise find, under settled law, that Trooper Lister's command for appellant to exit his vehicle did not violate appellant's constitutional rights. "[T]he United States Supreme Court has recognized that a police officer may order a driver or passenger to exit his vehicle if properly stopped for a traffic violation, even if the officer does not have reasonable suspicion of criminal activity." *State v. Travis*, 2013-Ohio-581, ¶ 14 (8th Dist.), citing *Mimms*, 434 U.S. 106. This applies even in the absence of "furtive movements or gestures" suggesting concealment of a firearm or other contraband. *Travis* at ¶ 14.

{¶ 20} In *State v. Jackson*, 2022-Ohio-4365, which similarly involved a *Mimms* order following a stop for a possible window-tint violation, the defendant

took "issue with the officer's decision to order him from the car." *Id.* at ¶ 13. The Ohio Supreme Court rejected that argument in summary fashion:

> [T]hat challenge is easily dispensed with. Under *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), fn. 6, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." An officer needs no justification beyond that necessary for the initial stop to order a driver from the car. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993).

*Id.* at ¶ 13. *See also Byrd*, 2022-Ohio-4635, at ¶ 20 (8th Dist.); *Cleveland v. Kalish*, 2018-Ohio-682, ¶ 26, fn. 2 (8th Dist.). In *Kalish*, this court wrote:

> [T]he trial court's reasoning that the scope of the stop was unlawfully exceeded because the officer had no reason to ask Kalish to exit his car, despite a valid traffic stop, was incorrect. Because the traffic stop was valid, Officer Suda could properly ask Kalish to exit his vehicle.

*Kalish* at ¶ 26, fn. 2. *See also State v. White*, 2014-Ohio-4202, ¶ 19 (8th Dist.) (request to exit vehicle "is permitted by a bright line rule given by the United States Supreme Court" in *Mimms*); *State v. Evans*, 67 Ohio St.3d 405, 408 (1993) ("[A] *Mimms* order does not have to be justified by any constitutional quantum of suspicion.").

{¶ 21} For the first time on appeal, appellant argues that we should no longer apply the *Mimms* bright-line rule. Specifically, appellant contends we should interpret Ohio Const., art. I, § 14 as providing more protection than the U.S. Const., amend. IV.[2] Appellant, however, waived that argument by not advancing it below.

---

[2] Appellant also argues that *Mimms*, which has not been overruled by the United States Supreme Court, was incorrectly decided under the Fourth Amendment. We will not entertain that argument.

{¶ 22} In a motion to suppress, "the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. The Ohio Supreme Court clarified that this requirement not only puts the prosecutor and trial court on notice of the issues to be decided, but also, "*by omission, those issues which are otherwise being waived.*" (Emphasis added.) *Shindler* at 58. *See also State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18. "Arguments not made by the defendant at the suppression hearing are, therefore, deemed to have been waived." *Id.* at ¶ 19, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). *See also State v. Peagler*, 76 Ohio St.3d 496, 500 (1996) ("Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal.").

{¶ 23} In *State v. Hall*, 2022-Ohio-2772 (8th Dist.), the defendant argued on appeal that because medical marijuana was legal in Ohio, the odor of marijuana did not provide probable cause for a search. This court observed that Hall had not made that argument to the trial court. It then held that "[b]ecause Hall did not raise this argument in the joint motion to suppress, nor did his counsel make this argument orally at the suppression hearing, we decline to consider this argument." *Id.* at ¶ 26. *See also State v. Riedel*, 2017-Ohio-8865, ¶ 48 (8th Dist.) ("This waiver rule applies to arguments not asserted either in a written motion to suppress or at a suppression hearing."); *State v. Massingill*, 2009-Ohio-6221, ¶ 20 (8th Dist.) ("[T]he failure to raise suppression claims in the trial court prior to the commencement of trial

precludes raising the argument for the first time on appeal."); *State v. Jones*, 2009-Ohio-5701, ¶ 46 (8th Dist.) ("Jones's failure to raise the custodial interrogation-*Miranda* issue, either in his motion to suppress or at the suppression hearing, constituted a waiver of that issue."); *State v. Roubideaux*, 2010-Ohio-73, ¶ 44 (8th Dist.).

{¶ 24} At oral argument, we asked appellant whether he had argued to the trial court that under the specific facts of this case, Ohio Const., art. I, § 14 should be interpreted more expansively than the U.S. Const., amend. IV. The best appellant could do was note that at the trial-court level, he had cited *State v. Robinette*, 80 Ohio St.3d 234 (1997), which he believed preserved all arguments under the Ohio Constitution. We reject that contention. While *Robinette* certainly addressed both the Ohio Constitution and the Fourth Amendment, the Ohio Supreme Court held in that case "that Section 14, Article I of the Ohio Constitution affords protections that are *coextensive* with those provided by the Fourth Amendment." (Emphasis added.) *Id*. at 245. More importantly, a careful review of appellant's brief below and the hearing transcript reveal that he cited *Robinette* for general constitutional principles governing the extension of a traffic stop based upon "reasonably articulable facts giving rise to a suspicion of criminal activity." *Id*. at 241.

{¶ 25} There is a chasm of difference between this species of argument and the contention that Ohio Const., art. I, § 14 provides more robust protection in the present circumstances than the Fourth Amendment. The proof of this is appellant's own exemplary reply brief, which urges a "break with parallelism" and discusses,

inter alia, Ohio's "strong history and tradition of limiting the power of law enforcement to carry out minimal-suspicion searches and seizures" and this state's "frontier spirit." (Appellant's reply at p. 5-7.) None of these arguments, nor anything like them, were made below. Appellant's argument that Ohio's Constitution should provide stronger protection than the Fourth Amendment to the United States Constitution in the *Mimms* context has been waived. We will not address it.

{¶ 26} Moreover, appellant has not argued that the trial court's denial of the motion to suppress was plain error. "Where a defendant does not argue plain error on appeal, the appellate court need not consider the issue." *State v. Speights*, 2021-Ohio-1194, ¶ 14 (8th Dist.); *State v. Tate*, 2022-Ohio-4745, ¶ 20 (8th Dist.). Even if appellant had briefed plain error, there is authority that in considering constitutional challenges, "addressing an argument not raised below in support of a motion to suppress, even under plain error, would be inappropriate." *State v. Walker*, 2017-Ohio-9255, ¶ 29 (1st Dist.). As the Eleventh District wrote in *State v. Mock*, 2013-Ohio-874, ¶ 10 (11th Dist.):

> [W]e question the propriety of a plain error analysis in the context of a defendant's failure to make constitutional arguments in a suppression motion. Under appellant's line of reasoning, the trial court, to avoid the alleged error in this case, would have been required to raise new suppression issues *on behalf of* appellant, request the parties to present evidence on those matters, and then evaluate the issues.

(Emphasis in original.) *Id*. at ¶ 10. In any event, and particularly in light of the line of Ohio cases following *Mimms* from both the Ohio Supreme Court and this court,

we cannot find anything in the record to suggest that the trial court's denial of the motion to suppress was plain error.

### D. The Pat Down

{¶ 27} We have already concluded that Trooper Lister's order that appellant step out of his vehicle was constitutional under *Mimms* and its progeny. "If reasonable suspicion thereafter arises from acts of the motorist while alighting or the officer's better observation of the motorist, an officer may proceed with other investigatory steps that require reasonable suspicion." *Kalish*, 2018-Ohio-682, at ¶ 27 (8th Dist.). *See Terry v. Ohio*, 392 U.S. 1 (1968). *See also State v. Mathews*, 1994 Ohio App. LEXIS 4063, *11 (8th Dist. Sept. 15, 1994). In other words, "'the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others.'" *Moore*, 2014-Ohio-2979, at ¶ 13 (8th Dist.), quoting *State v. Lawson*, 2009-Ohio-62, ¶ 21 (2d Dist.). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Evans*, 67 Ohio St.3d at 422, citing *Terry* at 24. *See also Moore* at ¶ 13. "To justify a pat-down, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id*. at ¶ 13, quoting *Terry* at 27.

{¶ 28} In *Hoskins*, 2002-Ohio-3451 (8th Dist.), which the trial court cited, this court emphasized that "[t]he mere fact that an officer has ordered an occupant from his or her vehicle does not bestow upon the officer entitlement to conduct a

*Terry* search." *Id*. at ¶ 15. Rather, as discussed above, *Terry* permits a "limited protective search" for concealed weapons if the officer reasonably determines a detained individual might be armed and dangerous. *Id*. In *Hoskins*, the police officer "approached the vehicle [and] noticed Hoskins' right hand placed down the front of his pants in a posture leading him to believe Hoskins was hiding or retrieving a weapon." *Id*. at ¶ 16. In addition to other indicators of a possibly dangerous situation, this court concluded that the officer "had a reasonable, objective basis for conducting a *Terry* search of Hoskins." *Id*. at ¶ 16.

{¶ 29} In light of *Hoskins* and similar precedent, we will not disturb the trial court's denial of appellant's motion to suppress. Trooper Lister testified that appellant exited the vehicle with a posture that suggested he was concealing something in or near his waistband. "[H]is right arm [was] notably hugged toward his midline as if he's almost holding a football . . . ." (Tr. 22.) According to Trooper Lister, appellant was "hinged over at the waist notably forward," and appellant's "right hand [was] almost hidden into his waistline." (Tr. 23.) Trooper Lister testified that in his experience, it was "not normal for someone to step out of a car hinged at the waist hugging his waistline with his right hand." (Tr. 23-24.) In addition, appellant had already displayed an Ohio identification card instead of a valid driver's license, and Trooper Lister had observed broken glass on the floor. In reviewing the body-camera footage, we observe that the pat down appeared to be precisely the kind of "cursory search for weapons" permitted under *Terry*. *State v. Knox*, 2013-Ohio-1662, ¶ 23 (8th Dist.). It is no stretch to say that within moments

of beginning the pat down, Trooper Lister discovered appellant's Smith & Wesson 9 mm handgun in exactly the location appellant's unusual posture led him to suspect.

{¶ 30} The traffic stop was constitutionally permissible. The order to step out of the vehicle was lawful under *Mimms* and its progeny. The pat down was constitutionally sound under *Terry* and the Ohio cases applying it. Appellant's sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR