[Cite as *State v. Hall*, 2022-Ohio-2772.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111019 |
| v. | : | |
| MARKWAN HALL, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 11, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656902-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jamielle Lamson-Buscho, Assistant Prosecuting Attorney, *for appellee*.

Rick L. Ferrara, *for appellant*.

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Markwan Hall ("Hall") appeals the denial of his motion to suppress following a no contest plea to drug trafficking and drug possession. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On April 7, 2021, a Cuyahoga County Grand Jury indicted Hall and codefendant Darvon Johnson ("Johnson") on one count of drug trafficking in violation of R.C. 2925.03(A)(2), a third-degree felony; one count of drug possession in violation of R.C. 2925.11(A), a third-degree felony; and one count of drug possession in violation of R.C. 2925.11(A), a fifth-degree felony. These charges arose from an incident that occurred on May 14, 2020.

{¶ 3} On that date, Johnson and Hall landed at Cleveland Hopkins International Airport in Cleveland, Ohio. The two men retrieved their checked baggage, got in their vehicle, and began to drive home to Pennsylvania. After leaving the airport, Ohio State Highway Patrol Trooper Darrell Dowler ("Dowler") initiated a traffic stop of the vehicle. A subsequent search of the vehicle revealed what appeared to be marijuana and THC cartridges.

{¶ 4} Dowler authored an investigative report related to the stop, which began:

> On May 14, 2020 I was contacted by a confidential source about possible criminal activity. On May 14, 2020 at approximately 20:23 hours, I was contacted over the radio by plain clothes officers advising me there was a black Jeep Compass northbound on IR 71 about mile post 240 in the city of Cleveland driving at a high rate of speed.

The report goes on to state that the plain clothes officers followed the Jeep in their unmarked vehicles and observed the Jeep traveling 90 mph in a 60 mph zone. Dowler then responded to the area and observed the Jeep exit the highway onto

West 150th Street. Dowler initiated a traffic stop as the vehicle pulled into a gas station.

{¶ 5} Dowler's report goes on to state that when he made contact with the driver — later identified as Hall — Dowler smelled a strong odor of raw marijuana and noticed that Hall was "overly nervous," stating that his hands were shaking uncontrollably and he was breathing heavily. Dowler stated that the front seat passenger — later identified as Johnson — was also "overly nervous." Dowler also reported that Johnson was wearing a white shirt that read "I love weed."

{¶ 6} Hall could not find his driver's license, at which point Dowler instructed him to exit the vehicle and come to his patrol car. Dowler patted Hall down for weapons and placed him in the right rear seat of his patrol car. At this point, two other troopers, Kelley and Hershman, had arrived on the scene for assistance. Hershman patted down Johnson for weapons and secured him in the right rear seat of Hershman's patrol car. When Hall and Johnson were both secured in patrol cars, the troopers conducted a probable cause search of the vehicle. During the search, they located a suitcase in the back seat with Johnson's name on it. Upon opening the suitcase, the troopers found four vacuum sealed bags containing what the troopers believed to be marijuana, along with vape cartridges and marijuana edibles.

{¶ 7} In the trunk, the troopers found a suitcase with Hall's name on it. Upon opening Hall's suitcase, they found four vacuum sealed bags containing what was believed to be marijuana, along with vape cartridges and marijuana edibles.

After finishing the search, Dowler secured the evidence and returned to his patrol car.  Dowler advised Hall of his rights.  Dowler asked Hall if the marijuana in his suitcase belonged to him, and he said yes.  Hershman had a similar conversation with Johnson, during which Johnson stated that all the contraband found cost around $15,000 dollars.

{¶ 8} Dowler advised Hall and Johnson that they would receive letters telling them where to appear, issued Hall a warning for speeding, and released both men.  Dowler transported the evidence to the Brook Park Highway Patrol Post, where it was packaged and sent to the crime lab for analysis.

{¶ 9} Hall and Johnson were subsequently indicted on the charges described above.  Hall initially pleaded not guilty to these charges.

{¶ 10} On September 8, 2021, the defendants filed a joint "motion to reveal information relayed to officers from confidential informant."  The motion argued that the identity of the confidential informant referenced in Dowler's investigative report must be disclosed because it would be helpful or beneficial to the accused in preparing or making a defense to criminal charges.  The motion noted that Dowler's inclusion of a reference to information from a confidential source about "potential criminal activity" in the first line of his investigative report shows that this was critical to Dowler.  The defendants attached two exhibits to this motion.  Exhibit A was Dowler's investigative report.  Exhibit B, which defendants state was produced by the state, is what is alleged to be contents of an email from the plain clothes officer sent on May 13, 2021.

{¶ 11} On September 20, 2021, the court held a hearing on the joint motion. The defense called Detective Dave Norman ("Detective Norman"). Detective Norman testified that on May 14, 2020, he was working undercover in an unmarked vehicle in the area of Interstate 71 and Snow Road when he observed a black Jeep driving on the highway. The Jeep passed Detective Norman at a speed of somewhere "in the area of 70, 75 miles per hour." Detective Norman testified that he was in the right lane when he observed the Jeep cut across two lanes of traffic to exit onto West 150th Street. Detective Norman followed the Jeep off the highway.

{¶ 12} In response to what he observed, Detective Norman contacted Dowler by phone or radio. Detective Norman could not remember exactly what he said to Dowler, but he relayed that a dark Jeep had passed him and cut off a lane of traffic. Detective Norman testified that "it almost appeared they were running from the police." The following exchange took place:

> DEFENSE COUNSEL: According to Trooper Dowler's report there was a confidential informant that was involved in this case. Were you aware of that prior to today?
>
> DETECTIVE NORMAN: I believe he was referring to me.
>
> DEFENSE COUNSEL: You were the confidential informant?
>
> DETECTIVE NORMAN: Yes.
>
> DEFENSE COUNSEL: So you were aware of possible drug activity involving Mr. Hall and Mr. Johnson?
>
> DETECTIVE NORMAN: No.
>
> * * *

DEFENSE COUNSEL: So you're unaware of any other [confidential informant] that had previously reported criminal activity to Trooper Dowler?

DETECTIVE NORMAN: No.

DEFENSE COUNSEL: You're not aware of any?

DETECTIVE NORMAN: No.

Detective Norman also confirmed that at the time of the stop in this case, he was not investigating or working on any cases involving Hall or Johnson, nor had he previously been advised by anyone that Hall or Johnson were involved with drug trafficking or other criminal activity.

{¶ 13} The defense then called Dowler, who testified regarding the traffic stop and the investigative report summarized above. Dowler confirmed that he used two distinctive terms, "confidential source" and "plain clothes officer" in his report, but he testified that he misworded his report and only received information from Detective Norman. Dowler also testified that the "possible criminal activity" referred to in his report was "just what — how he was driving, how he was acting, whatever they observed." Dowler then appeared to contradict himself, stating that traffic infractions such as traveling at a high rate of speed would generally not be construed as criminal activity.

{¶ 14} Dowler testified that he received information from Detective Norman that the Jeep had been speeding, but Dowler did not observe the Jeep commit any traffic infractions.

**{¶ 15}** At the conclusion of the September 20 hearing, the state stipulated that Detective Norman was the "confidential source" referred to in Dowler's investigative report.

**{¶ 16}** On September 27, 2021, the court held a hearing on the defendants' joint motion to suppress. Dowler and Detective Norman testified, and the defense introduced Dowler's dash-cam video. After hearing testimony from witnesses and arguments from the parties, the court denied the joint motion to suppress. Subsequently, both defendants entered no contest pleas to all three counts of the indictment.

**{¶ 17}** On October 27, 2021, the court sentenced Hall to one year of community control on each count.

**{¶ 18}** Hall appeals, presenting two assignments of error for our review:

> I. The trial court erred in failing to suppress all evidence, including observations and conclusions, from the unconstitutional arrest of Hall and search of his vehicle.

> II. Appellant received ineffective assistance of counsel by failure of counsel to fully move to suppress the fruits of appellant's unconstitutional arrest and search of his vehicle.[1]

## Law and Analysis

## I. Motion to Suppress

**{¶ 19}** In his first assignment of error, Hall argues that the trial court erred in failing to suppress all evidence, including observations and conclusions, from the

---

[1] Hall's codefendant, Johnson, also appealed the trial court's denial of the joint motion to suppress in a companion appeal, *State v. Johnson*, 8th Dist. Cuyahoga No. 111040.

unconstitutional arrest of Hall and search of his vehicle. Specifically, Hall argues that Dowler's arrest and subsequent search of his vehicle were conducted without probable cause, in violation of the constitutional protection against unreasonable searches and seizures.

{¶ 20} An appellate review of a motion to suppress presents a mixed question of law and fact; we accept the trial court's findings of fact if they are supported by competent, credible evidence but must independently determine whether the facts satisfy the applicable legal standard. *Cleveland v. Jones*, 8th Dist. Cuyahoga No. 107257, 2019-Ohio-1525, ¶ 8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[W]hen there is substantial evidence to support the factual findings of the trial court, the decision on the motion to suppress will not be disturbed on appeal absent an error of law." *Id.* Following a thorough review of the record, we find that the trial court's findings related to the joint motion to suppress were supported by competent, credible evidence.

{¶ 21} The Fourth Amendment of the United States Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *State v. Stewart*, 8th Dist. Cuyahoga Nos. 109867 and 109868, 2022-Ohio-199, ¶ 13, citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution contains nearly identical language and affords citizens the

same protections. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997). The prohibition applies to the stopping of motor vehicles and the seizing of its occupants. *Cleveland Hts. v. Brisbane*, 2016-Ohio-4564, 70 N.E.3d 52, ¶ 14 (8th Dist.), citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), paragraph two of the syllabus.

{¶ 22} While stopping a motor vehicle and detaining its occupants is a "seizure" under the Fourth Amendment, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Stewart* at ¶ 14, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed. 660 (1979). Further, "[i]t is well established that '[a] police officer may [initiate] a traffic stop of any motorist *for any traffic infraction*, even if the officer's true motive is to detect more extensive criminal conduct.'" *Id*. at ¶ 15, quoting *State v. Hrytsyak*, 8th Dist. Cuyahoga No. 108506, 2020-Ohio-920, ¶ 21.

{¶ 23} Here, Detective Norman testified that Hall was driving at least ten miles over the posted speed limit. Because Detective Norman was in an unmarked vehicle and not equipped to conduct a traffic stop himself, he relayed this information to Dowler. We reiterate that a traffic stop is constitutionally valid where police have observed the driver commit a traffic violation. *Stewart* at ¶ 20, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). Further, although Dowler himself did not witness Hall commit any traffic violations, "police

may initiate investigatory stops based on the observations of other officers or citizens." *Id.*, citing *Lyndhurst v. Brickel*, 8th Dist. Cuyahoga No. 72322, 1998 Ohio App. LEXIS 2334, 4 (May 28, 1998). Therefore, probable cause existed for Dowler to initiate the traffic stop.

{¶ 24} With respect to the subsequent search of the vehicle, a warrantless search of a vehicle may be justified when an officer has probable cause to believe that the vehicle contains contraband based upon the well-established automobile exception to the warrant requirement. *State v. Dickerson*, 8th Dist. Cuyahoga No. 94567, 2010-Ohio-5787, ¶ 21, citing *State v. Moore*, 90 Ohio St.3d 47, 52, 734 N.E.2d 804 (2000). Further, Ohio courts have reiterated that

> the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*State v. Taylor*, 2020-Ohio-5079, 161 N.E.3d 844, ¶ 10 (8th Dist.), quoting *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 18, citing *State v. Moore* at 48.

{¶ 25} Here, Dowler testified that he was a K-9 handler who dealt with narcotics on a regular basis. He explained that he was very familiar with the smell of marijuana as a result of his training and experience on the job. He further testified that as a K-9 handler, he carried marijuana every day and could identify marijuana based on the smell. Dowler testified that as he approached the vehicle to speak with Hall, he "smelled a strong odor of raw marijuana coming from inside

the vehicle." This was sufficient to provide Dowler with probable cause to search Hall's vehicle. We also note that Dowler also testified that both Hall and Johnson appeared extremely nervous.

{¶ 26} Hall also argues that because medical marijuana is legal in Ohio, the odor of raw marijuana was insufficient to establish probable cause for the search, and Dowler should have ascertained whether Hall was authorized to use medical marijuana before conducting the search. Hall cites no Ohio law in support of this assertion. Further, we note that a motion to suppress must "state with particularity the legal and factual issues to be resolved," thus placing the state and the court "on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *Columbus v. Ridley*, 2015-Ohio-4968, 50 N.E.3d 934, ¶ 23 (10th Dist.), citing *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994). Because Hall did not raise this argument in the joint motion to suppress, nor did his counsel make this argument orally at the suppression hearing, we decline to consider this argument.

{¶ 27} Therefore, the search of the vehicle did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. Because neither the stop nor search was unconstitutional, Hall's first assignment of error is overruled.

## II. Ineffective Assistance of Counsel

{¶ 28} In his second assignment of error, Hall argues that in the event this court finds that he waived the issue described above in his motion to suppress, the failure to raise the argument constituted ineffective assistance of counsel.

{¶ 29} The Sixth Amendment of the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy the right to * * * have the assistance of counsel for his defense." The United States Supreme Court has reasoned that the right to counsel for one's defense entails having the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

{¶ 30} To that effect, the United States Supreme Court has established the elements required to prevail on an ineffective assistance of counsel claim, which the Ohio Supreme Court has adopted. *See Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). One must show two things to succeed on such a claim: (1) counsel substantially violated an essential duty to the client, which requires showing that counsel's representation fell below an objective standard of reasonableness, and (2) the violation prejudiced the defense, which requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Bradley* at 141-142.

{¶ 31} The record reflects that Hall's counsel filed and argued a well-reasoned, though ultimately unsuccessful, motion to suppress on his behalf. As

noted above, the argument Hall makes now with respect to medical marijuana is unsupported by Ohio law. Because Hall is unable to point to support for his argument in Ohio law, we cannot conclude that counsel's omission of this argument in his motion to suppress fell below an objective standard of reasonableness. Therefore, Hall is unable to satisfy the requirements of *Strickland*. Hall's second assignment of error is overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK DANIEL CELEBREZZE, P.J., and
MARY J. BOYLE, J., CONCUR