[Cite as *Westlake v. Goodman*, 2022-Ohio-3045.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF WESTLAKE,                    :

    Plaintiff-Appellee,          :

                           No. 111300

    v.                           :

PARKER GOODMAN,                      :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 1, 2022

---

Criminal Appeal from the Rocky River Municipal Court
Case No. 21-TRC-1552

---

### *Appearances:*

Michael P. Maloney, City of Westlake Director of Law, and
John F. Corrigan, Assistant Prosecutor, *for appellee*.

Milano Attorneys & Counselors at Law, Jay Milano, and
Kate Pruchnicki, *for appellant*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Parker Goodman, appeals the trial court's decision denying his motion to suppress. For the reasons that follow, we affirm.

## I.    Procedural History and Background

{¶ 2}    In May 2021, Goodman was charged with (1) operating a motor vehicle while under the influence of alcohol, a first-degree misdemeanor violation of R.C. 4511.19(A)(1)(a); (2) operating a motor vehicle while under the influence of alcohol, a first-degree misdemeanor violation of R.C. 4511.19(A)(1)(d); and (3) operating a vehicle without reasonable control, a minor misdemeanor violation of R.C. 4511.202(A).

{¶ 3}    The charges stemmed from a single-car accident where Goodman admitted to speeding down Hilliard Boulevard, missing the turn onto Lincoln Road, losing control of his vehicle, and crashing into a large pile of rocks on private property.  As a result of the accident, the back end of Goodman's vehicle was suspended on the rock pile, rendering his vehicle immobile.  Police responded and, following a field sobriety test, Goodman was arrested for operating a motor vehicle while impaired ("OVI").  A subsequent breath test yielded a blood alcohol content ("BAC") of .167.  Goodman filed a motion to suppress, contending that (1) the officer's decision to administer the field sobriety tests was not independently justified by reasonable suspicion that he was operating a vehicle while impaired; and (2) the officer lacked probable cause to arrest him for OVI.

{¶ 4}    A magistrate conducted the suppression hearing at which the city presented testimony and evidence from one witness, Officer Thomas Podulka ("Officer Podulka") of the Westlake Police Department.

{¶ 5} Officer Podulka testified that in the early morning hours of Saturday, May 21, 2021, he was dispatched to the intersection of Hilliard Boulevard and Lincoln Road around 2:10 a.m. on a report of a possible motor vehicle accident. He said that the caller reported hearing a "loud boom." Officer Podulka testified that upon his arrival, he observed the driver, later identified as Goodman, exiting the driver's side of the vehicle, which had its hazard lights on after having collided with a large pile of rocks. He stated that the vehicle's back end was suspended on top of the rocks and the hood was propped open. Officer Podulka testified that it was not uncommon for there to be accidents at this location late at night because the roadway has "a hard angle, a sharp curve." He testified that this was the first accident at this specific intersection with which he had been involved that was the result of alcohol-impaired driving.

{¶ 6} Officer Podulka's interaction with Goodman was captured by the officer's dash camera, and the video was played for the court. The officer stated that during his initial interaction, Goodman denied needing medical attention or that he was drinking but admitted that he was speeding and lost control of his vehicle. Goodman told the officer that the accident just happened "about 2 minutes before" police arrived and that he was heading back to his residence about a mile away. He stated that he was just out "cruising around." Officer Podulka testified that during his initial engagement with Goodman he did not detect any odor of alcohol due to the smell caused by the deployed airbag inside of the vehicle.

**{¶ 7}** Officer Podulka told the court that he made the decision to administer standardized field sobriety tests after speaking with Goodman and observing his glassy, bloodshot eyes, and noticing that Goodman was stumbling over his words. Officer Podulka confirmed that he did not detect any odor of alcohol prior to his decision to conduct the field sobriety tests, but said that based on his knowledge, training, and experience, he believed that Goodman was impaired. Officer Podulka further testified that as Goodman was walking back toward the police cruiser, his gait was unsteady and that he was stepping very deliberately — "trying to be sure of every step."

**{¶ 8}** Officer Podulka testified that he administered the Horizontal Gaze Nystagmus ("HGN") test and that Goodman exhibited four of six clues of impairment during the test. The dash-cam video, which captured the administration of the test, showed Goodman on two occasions looking away from Officer Podulka during the test on two occasions, prompting the officer to instruct Goodman to focus on him. Additionally, Goodman is heard advising the officer during his performance of the test that his stepbrother is a police officer. Following the HGN test, Officer Podulka again asked Goodman how much he had to drink that night; again, Goodman denied drinking.

**{¶ 9}** Officer Podulka testified that he did not administer other standardized field sobriety tests, i.e., the walk-and-turn and one-leg stand tests, because Goodman stated that he suffers from postural orthostatic tachycardia syndrome (POTS), which according to Goodman, causes him to become dizzy and

prevents him from doing those tests. Officer Podulka testified if that were true, Goodman's medical condition would have affected his ability to perform the tests. Accordingly, Officer Podulka requested that Goodman to perform a non-standardized field sobriety test of reciting the alphabet, which Goodman successfully performed.

{¶ 10} The dash-cam video captured Officer Podulka asking Goodman to write a statement about what had happened. During this conversation, Goodman stated that he was speeding — estimating his speed between 50 and 60 m.p.h. — being a "dumbass," and missing his turn. Officer Podulka again asked Goodman how much he had to drink and told Goodman that he felt he was not being honest with him about not drinking. Goodman reminded the officer that he took the field sobriety tests, but also advised the officer that he knew Chief Bielozer, the Westlake Chief of Police.

{¶ 11} Officer Podulka testified that he asked Goodman if he would consent to a portable breath test ("PBT"). The audio from the dash-cam video recorded an extensive conversation between Officer Podulka, Patrolman Steven Paulick, and Goodman about what would happen if he performed or did not perform the breath test. Goodman agreed to take the PBT, but was unsuccessful due to his inability to blow into the PBT for the requisite amount of time. During his three unsuccessful attempts, he again advised the officers that he was friends with Chief Bielozer. Following his unsuccessful attempts to submit to the PBT, Officer Podulka arrested Goodman for OVI.

{¶ 12} At the conclusion of hearing, the magistrate denied the motion to suppress, finding that the video, combined with Officer Podulka's testimony, demonstrated that the officer had reasonable suspicion to justify the administration of field sobriety tests. The magistrate further found that during the HGN test Goodman exhibited four out of the six indicators for impairment. Accordingly, the magistrate concluded that Officer Podulka had probable cause to arrest Goodman for OVI. The magistrate subsequently issued a written decision.

{¶ 13} Goodman filed timely objections, contending that the magistrate's finding that the officer smelled alcohol after Goodman walked away from his vehicle was inconsistent with the officer's testimony and that the magistrate's decision lacked any conclusion of law related to the officer having reasonable suspicion to warrant the administration of field sobriety testing.

{¶ 14} On October 19, 2021, the trial court overruled Goodman's objections and upheld the magistrate's decision denying the motion to suppress.

{¶ 15} In February 2022, Goodman pleaded no contest to all charges. The trial court imposed a fine and sentenced Goodman to serve 180 days in jail, with 180 days suspended. He was placed on six-months of basic community control supervision with conditions, and given a one-year driver's license suspension.

{¶ 16} Goodman now appeals, raising two assignments of error, each challenging the trial court's decision denying his motion suppress.

## II. The Appeal

{¶ 17} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. With regard to factual determinations, "[a]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "But the appellate court must decide the legal questions independently, without deference to the trial court's decision." *Id.*, citing *Burnside* at ¶ 8.

### A. Reasonable Suspicion

{¶ 18} In his first assignment of error, Goodman contends that the trial court erred in determining that Officer Podulka had reasonable suspicion to expand the traffic crash investigation into an OVI investigation by deciding to administer standardized field sobriety tests.

{¶ 19} Reasonable suspicion requires that the officer "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer may not ask a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Cleveland v. Kalish*, 8th Dist. Cuyahoga No. 105557, 2018-Ohio-682, ¶ 19, citing *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio

App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998). "'A court analyzes the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *Dedejczyk* at *id.*, citing *State v. Dye*, 11th Dist. Geauga No. 2001-P-0140, 2002-Ohio-7158.

{¶ 20} In this assignment of error, Goodman focuses on the fact that Officer Podulka made the decision to conduct field sobriety tests only after a brief encounter with him and without smelling any odor of alcohol. Our review of the relevant case law does not reveal any minimum timeframe within which an officer must interact with a motorist to garner reasonable suspicion that the motorist may be intoxicated.

{¶ 21} Rather, various factors are considered by courts when determining whether an officer had reasonable suspicion to administer field sobriety tests:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong,["] "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account

by a reviewing court in determining whether the officer acted reasonably.

*Dedejczyk* at ¶ 30, quoting *Evans* at 63, fn. 2.

{¶ 22} This court has explained that these factors are merely assistive guides in the determination of reasonable suspicion because no one factor is dispositive and the list does not represent an exhaustive account of factors that can or should be considered. *Dedejczyk* at ¶ 31, citing *State v. Boczar*, 11th Dist. Ashtabula No. 2004-A-0063, 2005-Ohio-6910, ¶ 14. Generally, courts approve a request to submit to field sobriety testing only where the officer based his or her decision on a number of these factors. *Evans* at 63.

{¶ 23} In this case, various *Evans* factors exist that would support Officer Podulka's decision to administer field sobriety tests. The evidence and testimony revealed that Goodman crashed his vehicle during the early morning hours on a Saturday; the accident occurred in an area known to Goodman — he only lived about a mile away; Goodman admitted to speeding and losing control of his vehicle; and Officer Podulka observed that Goodman's eyes were glassy and bloodshot and that Goodman was stumbling over his words during the initial interaction. Officer Podulka testified that based on his experience, training, and knowledge from over 400 OVI arrests, Goodman exhibited indicia of impairment warranting the administration of field sobriety tests. Based on the foregoing, we conclude that Officer Podulka's decision to perform standardized field sobriety tests prior to

actually smelling any alcohol emanating from Goodman was reasonable based on the totality of the circumstances.

{¶ 24} Goodman's first assignment of error is overruled.

## B. Probable Cause to Arrest

{¶ 25} Probable cause does not require proof beyond reasonable doubt. "In determining whether the police had probable cause to arrest appellant for OVI, we must determine whether, at the moment of arrest, the police had information sufficient to cause a prudent person to believe that the suspect was driving under the influence." *Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 57, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *see also State v. Doss*, 8th Dist. Cuyahoga No. 109235, 2020-Ohio-5510, ¶ 14; *Cleveland v. Jones*, 8th Dist. Cuyahoga No. 107257, 2019-Ohio-1525, ¶ 26; *Middleburg Hts. v. Gettings*, 8th Dist. Cuyahoga No. 99556, 2013-Ohio-3536. "A probable cause determination is based on the 'totality' of facts and circumstances within a police officer's knowledge." *Id.*, quoting *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997).

{¶ 26} In his second assignment of error, Goodman contends that the trial court erred in determining that Officer Podulka had probable cause to arrest him for OVI. Goodman relies on his prior arguments that the results of the field sobriety test should be excluded because no reasonable suspicion existed to warrant conducting the tests. He contends that if the results are excluded, then the officers lacked probable cause to arrest him for OVI. In support of his argument, Goodman

cites to this court's decisions in *S. Euclid v. Bautista-Avila*, 2015-Ohio-3236, 36 N.E.3d 246 (8th Dist.), and *Cleveland v. Krivich*, 2016-Ohio-3072, 65 N.E.3d 279 (8th Dist.). We find both distinguishable.

{¶ 27} In *Bautista-Avila*, this court upheld the trial court's decision suppressing the evidence obtained during a routine sobriety checkpoint. Even though the officer smelled a moderate odor of alcohol, observed empty beer bottles inside the car, and Bautista-Avila admitted to drinking, this court agreed with the trial court that the officer lacked probable cause to arrest Bautista-Avila for OVI. This court agreed with the trial court that the officer's testimony was entirely inconsistent with the video that captured Bautista-Avila's field sobriety tests. Rather, the testimony and evidence established that the officer failed to conduct the field sobriety tests in substantial compliance with the guidelines set forth by the National Highway Traffic Safety Administration ("NHTSA"). Moreover, the video showed that Bautista-Avila did not display any signs that he was impaired by alcohol, i.e., no slurring of words or displaying movements that would indicate a lack of coordination, and he was not observed driving erratically. Accordingly, without any reliable indicia of impairment, the totality of the circumstances revealed that the officer lacked probable cause.

{¶ 28} Similarly, in *Krivich*, this court upheld the trial court's decision granting Krivich's motion to suppress after the arresting officer affirmatively acknowledged during the hearing that he had deviated from NHTSA standards while administering field sobriety tests. This court agreed with the trial court that

even though the traffic stop was lawful due to the traffic infraction, the officer lacked probable cause to arrest because the field tests were not conducted in substantial compliance with NHTSA guidelines and no other indicia of impairment was present.

{¶ 29} In this case, unlike in *Bautista-Avila* and *Krivich*, Goodman has not challenged whether Officer Podulka's administration of the standardized field sobriety tests substantially complied with the applicable NHTSA standards and guidelines. Accordingly, because we concluded based on the totality of the circumstances that reasonable suspicion existed to administer the field sobriety tests, and Goodman has not challenged the results of the HGN test, we find that the results are reliable and thus, are to be considered in determining the existence of probable cause. *See State v. Bresson*, 51 Ohio St.3d 123, 129-130, 554 N.E.2d 1330 (1990) (the HGN test is a reliable test for determining if a person in under the influence and can be used to establish probable cause).

{¶ 30} After reviewing the record, we conclude that Officer Podulka had probable cause to arrest Goodman for OVI. He first encountered Goodman after a single-car accident where the back end of his vehicle was stuck on a pile of large rocks. Goodman admitted to speeding and losing control of his car. During this initial interaction, Officer Podulka observed that Goodman's eyes were glassy and bloodshot and that Goodman was stumbling over his words. Suspecting that he was impaired, Officer Podulka asked Goodman to walk back to the police cruiser. The officer testified that at this time, he noticed that Goodman's gait was unsteady and that he was walking deliberately. Officer Podulka testified that he conducted the

HGN test and that Goodman exhibited four out of the six indicators of impairment. The officer testified that during this interaction, he then detected an odor of alcohol emanating from Goodman. After Goodman was unable to perform any further standardized filed sobriety tests due to a medical impairment (the ABC test is a non-standardized test), Officer Podulka offered Goodman the option to submit to a PBT, a test that Goodman was ultimately unable to perform. Officer Podulka testified that based on his training and experience with alcohol-impaired drivers, he believed Goodman operated his vehicle while under the influence of alcohol due to his observations and Goodman's performance of the HGN, and then the subsequent detection of alcohol coming from Goodman. Accordingly, he placed Goodman under arrest.

{¶ 31} We conclude that based on the results of the HGN test, coupled with the subsequent observation of Goodman's unsteady gait, detection of an odor of alcohol, and Goodman's inability to perform the PBT, Officer Podulka had probable cause to arrest Goodman for OVI. *See Tallmadge v. McCoy*, 96 Ohio App.3d 604, 610, 645 N.E.2d 802 (9th Dist.1994) (failure of an HGN test, combined with an odor of alcohol even without conducting other field sobriety tests, had been found to constitute probable cause to arrest); *State v. Williams*, 83 Ohio App.3d 536, 539, 615 N.E.2d 317 (3d Dist.1992) (where driver has glassy, bloodshot eyes, the odor of an alcoholic beverage on his breath, and is able to perform physical coordination tests only poorly, probable cause exists for arrest of OVI). Accordingly, the assignment of error is overruled

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
MARY J. BOYLE, J., CONCUR