[Cite as *Parma v. Perotti*, 2023-Ohio-3472.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF PARMA,                                   :

     Plaintiff-Appellee,                    :                    No. 112089

     v.                                              :

DEREK PEROTTI,                                  :

     Defendant-Appellant.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 28, 2023

---

Criminal Appeal from the Parma Municipal Court
Case No. 21-TRC-15946

---

### *Appearances:*

Timothy G. Dobeck, Law Director/Chief Prosecutor, and
Gregory A. Gentile, Assistant Prosecutor, *for appellee.*

Russell S. Bensing, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Derek Perotti appeals the trial court's denial of his motion to suppress evidence that was used to convict him of operating a vehicle under the influence ("OVI") following a jury trial. Perotti contends that the trial court erred in denying his motion to suppress evidence because officers lacked

reasonable suspicion to conduct field sobriety tests and lacked probable cause to arrest him for OVI.

{¶ 2}  For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3}  On December 5, 2021, Perotti was arrested and charged with one count of operating a vehicle under the influence of drugs or alcohol in violation of R.C. 4511.19(A)(1)(a) (Count 1) and one count of operating a vehicle under the influence of drugs or alcohol — BAC refusal with prior conviction — in violation of R.C. 4511.19(A)(2) (Count 2).  He pled not guilty to the charges.

{¶ 4}  On March 15, 2022, Perotti filed a motion to suppress evidence, seeking to suppress "any and all evidence" involving the "the alleged results of any field sobriety exercises and/or refusal to submit to chemical testing" related to the case, including tests of Perotti's "coordination and sobriety," observations and opinions of the police officers who "stopped, observed, arrested, and/or tested" Perotti regarding his sobriety and any statements taken from, or made by, Perotti.

{¶ 5}  On May 17, 2022, the trial court conducted a hearing on the motion to suppress.  Parma Patrol Officer Kyle Shoemaker testified at the hearing.  As Shoemaker testified, the city played video footage from Shoemaker's body camera that captured his interactions with Perotti.  The body camera footage was admitted into evidence as Joint Exhibit A.

{¶ 6}  Shoemaker testified that, during the late evening of Saturday, December 4, 2021 or early morning of Sunday, December 5, 2021, he was dispatched

to the Southern Parma Circle area to respond to a 911 call reporting "suspicious males walking up to young females' porches." According to Shoemaker, the 911 caller — a young female — reported that two vehicles, one of which was a black Buick sedan, were parked in front of her residence and that "a gentleman" had been sitting on her front porch. The caller indicated that when she asked the man why he was on her porch, he responded, "Don't worry about it," walked to his car (which was parked in front of the residence) and then "sat in front of his car for an extended period of time."

{¶ 7} Shoemaker testified that, as he approached the residence, he observed a black Buick sedan parked near the 911 caller's residence. Shoemaker stated that, at that time, he had "no idea what [he was] walking into," e.g., it could have been a felony, it could have been a misdemeanor trespass or it "could have been any crime at that point." Shoemaker indicated that the Buick left the scene immediately upon his arrival. Shoemaker activated his overhead lights and followed the Buick. He observed the vehicle for less than five seconds before it pulled over. Shoemaker stated that, during the limited time he observed the vehicle, no traffic violations were committed. He indicated that the driver was not driving erratically, the vehicle did not strike the curb, the vehicle was not speeding and the driver did not have any difficulty stopping the vehicle in response to Shoemaker's activation of his lights. Shoemaker testified that he stopped the Buick based solely on the 911 call and had "no reason to believe at the time that [he] was approaching somebody who may have been impaired."

**{¶ 8}** Shoemaker exited his police cruiser and approached the Buick. He testified that, "due to the nature of the call and knowing what ha[d] transpired," he told the driver (later identified as Perotti) to place his hands outside the window so he could see "if he had a weapon or anything" and requested that he provide identification and proof of insurance. He stated that he had to ask Perotti twice to show his hands before he complied.

**{¶ 9}** Shoemaker testified that Perotti then "began making some movements" that made Shoemaker "uneasy." Although Perotti told Shoemaker that his license was in his pocket, he appeared to have some difficulty locating it and started "reaching for other areas of his person or in his vehicle." Shoemaker stated that he asked Perotti to exit the vehicle due to a concern for officer safety. Shoemaker testified that he asked Perotti several times why he was in the area but that Perotti "never gave us a clear answer."

**{¶ 10}** Shoemaker patted Perotti down, handcuffed him and placed him in the back of his police cruiser. After he was handcuffed, Perotti asked Shoemaker several times whether he was being arrested. Each time, Shoemaker responded that Perotti was not under arrest but was "being detained" for "the duration of the investigation" of "the incident that occurred with the young females." Shoemaker maintained that, at that point, he could have arrested Perotti for trespass but did not do so because he was still gathering information.

**{¶ 11}** Shoemaker asked Perotti whether officers could search his vehicle; Perotti refused. Officer Schuld, a K-9 officer who was assisting Shoemaker, then

walked his dog around the vehicle. No narcotics or other drugs were indicated. After Schuld completed the walkaround of the vehicle, Perotti asked if he could leave; Shoemaker told him he could not and that he was still being detained.

{¶ 12} Shoemaker testified that, once Perotti was in the back of the cruiser, he had "more of a face-to-face communication" with Perotti. Shoemaker stated that, at that point, he smelled "a stronger odor of alcohol coming from [Perotti's] breath[]" and observed his eyes to be "red" and "glossy." He indicated that Perotti "admit[ted] to having an alcoholic beverage" and informed Shoemaker that he had "come from a bar." Shoemaker testified that Perotti appeared confused regarding where he was and where he was going and that Perotti's "story and behavior were not adding up to a normal person's behavior to imply more of an impaired state." Shoemaker explained that, although Perotti told the officers that he had pulled off Ridge Road, Perotti was observed nearly 40 houses down from Ridge Road such that Perotti's location did not make sense to Shoemaker. Shoemaker testified that there were no issues with Perotti's speech, e.g., his speech was not slurred, but claimed that Perotti exhibited "verbal combativeness" because "[h]e was not being up front and forthcoming with some of his answers."

{¶ 13} Shoemaker testified that he asked Perotti repeatedly whether he had been on the 911 caller's porch and that, each time, Perotti denied it.

{¶ 14} Shoemaker asked Perotti to exit the cruiser so that he could administer standardized field sobriety tests. Although he was handcuffed, Perotti did not stumble as he exited the cruiser. The handcuffs were removed and

Shoemaker administered three sobriety tests: the walk-and-turn test, the one-legged-stand test and the horizontal-gaze-nystagmus ("HGN") test. Prior to commencing the tests, Perotti informed Shoemaker that he had a problem with his right knee.

{¶ 15} Shoemaker testified regarding his qualifications and experience as a police officer and his training in conducting field sobriety tests. He testified as to how he conducted each test and how Perotti performed on each test. The administration of the field sobriety tests was captured on the body camera footage introduced at the hearing.

{¶ 16} Shoemaker testified that, during the walk-and-turn test, Perotti exhibited five of eight indicators of impairment — two of which were sufficient to evidence impairment — i.e., he was unable to keep his balance during the instruction phase; he started the test too soon; he was in the wrong starting position and placed his left foot in front of his right foot instead of placing his right foot in front of his left foot, as directed; he raised his arms for balance and he stepped off the line and did not touch heel-to-toe on every step.

{¶ 17} Shoemaker testified that, during the one-legged-stand test, Perotti became "verbally combative" and, contrary to instructions, did not lift his foot off the ground. Shoemaker stated that he regarded Perotti's response as a "refusal" to submit to the test due to Perotti's "verbal combativeness" and failure to complete the test after having been given the instructions for the test three times.

{¶ 18} Shoemaker testified that Perotti exhibited four out of six indicators of impairment on the HGN test. He stated that Perotti exhibited no signs of vertical gaze nystagmus.

{¶ 19} After administering the field sobriety tests, Shoemaker placed Perotti under arrest for OVI and transported him to the Parma jail. At the jail, Perotti refused to submit to a chemical breath test.

{¶ 20} During the suppression hearing, Perotti conceded that the initial stop of Perotti's vehicle for investigative purposes was valid but contended that (1) Shoemaker lacked reasonable suspicion to request that Perotti submit to field sobriety tests, (2) Shoemaker lacked probable cause to arrest him for OVI and (3) the field sobriety testing was not conducted in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") guidelines.

{¶ 21} After considering the evidence presented and the parties' arguments, the trial court excluded all evidence of the HGN test, concluding that Shoemaker had not properly administered that test. The trial court also noted that it saw nothing to indicate that Perotti was "verbally combative" during the administration of the field sobriety tests. However, the trial court otherwise denied the motion to suppress, concluding that "the detention was valid" and that "there was probable cause to arrest" Perotti for OVI.

{¶ 22} On June 10, 2022, Perotti filed a motion for findings of fact and conclusions of law related to the trial court's ruling on the motion to suppress. On June 30, 2022, the trial court issued its findings of fact and conclusions of law.

{¶ 23} With respect to the administration of the field sobriety tests and the circumstances that led to the administration of the sobriety tests, the trial court found, in relevant part:

> While out of the vehicle and being questioned, Officer Shoemaker was able to smell a strong odor of alcohol coming from the Defendant and observed him to have glossy red eyes. Defendant admitted to consuming alcohol and appeared to be confused as to his whereabouts. The Officer asked defendant if he would consent to field sobriety testing. Defendant agreed.
>
> Defendant was instructed on the Walk and Turn. It was reported that Defendant failed this test.
>
> Defendant was instructed on the One Leg Stand Test. It was reported that Defendant failed this test.

{¶ 24} With respect to its determination that Shoemaker had probable cause to arrest Perotti for OVI, the trial court further found:

> The Officer (Kyle Shoemaker) testified that Defendant was found in his vehicle; that Defendant had a strong smell of alcohol coming from inside his vehicle; that the Defendant was the only occupant of the vehicle; that Defendant had red glossy eyes; that the Defendant admitted to drinking "one beverage" and that he was returning from a bar, and that the Defendant seemed confused as to his whereabouts. The Court concluded that such evidence was sufficient to establish probable cause to arrest for OVI.

{¶ 25} On September 2, 2022, Perotti filed an objection to the trial court's finding of fact that Perotti had stated he was "returning from a bar," claiming that the statement could not be heard on the body camera footage introduced into evidence and that the trial court had previously indicated that it did not hear the alleged statement. Perotti requested that the trial court amend its findings of fact and conclusions of law to remove this alleged statement and reexamine whether

there was probable cause for his arrest in the absence of the statement. The trial court overruled the objection.

{¶ 26} The case proceeded to a jury trial. Perotti was found guilty on both counts. The trial court further found that this was Perotti's second OVI conviction in the last six years. The trial court merged the counts for sentencing and sentenced Perotti to 180 days in jail (160 days suspended) and 24 months of community control. The trial court suspended Perotti's driver's license for 730 days (with limited driving privileges) and ordered him to pay a $750 fine and costs. The trial court thereafter stayed execution of Perotti's sentence.

{¶ 27} Perotti appealed, raising the following assignment of error for review:

> The trial court erred in denying Defendant's Motion to Suppress Evidence.

## Law and Analysis

{¶ 28} Perotti argues that the trial court erred in denying his motion to suppress because Shoemaker (1) lacked a reasonable suspicion that Perotti was driving while under the influence to justify the administration of field sobriety tests and (2) lacked probable cause to arrest Perotti for OVI.

**Standard of Review**

{¶ 29} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When reviewing a ruling on a motion to suppress, "[a]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, i.e., whether the facts satisfy the applicable legal standard, our standard of review is de novo. *Cleveland v. Hyppolite*, 2016-Ohio-7399, 76 N.E.2d 539, ¶ 15 (8th Dist.). "[T]he appellate court must decide the legal questions independently, without deference to the trial court's decision." *Hawkins* at ¶ 16, citing *Burnside* at ¶ 8.

**Reasonable Suspicion to Administer Field Sobriety Tests**

{¶ 30} Perotti argues that an odor of alcohol and red, glossy eyes were an insufficient basis to detain Perotti to perform field sobriety tests "in the absence of any evidence of slurred speech, erratic driving, balance problems, or failure to comply with the commands of a police officer" and that the trial court, therefore, erred in denying his motion to suppress.

{¶ 31} Once a driver has been lawfully stopped, an officer may not ask a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Westlake v. Goodman*, 8th Dist. Cuyahoga No. 111300, 2022-Ohio-3045, ¶ 19;

*Cleveland v. Kalish*, 2018-Ohio-682, 106 N.E.3d 881, ¶ 19 (8th Dist.); *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29. Reasonable suspicion requires that the officer "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also Goodman* at ¶ 19. Reasonable suspicion does not, however, require that an officer "observe and relate overt signs of intoxication." *Cleveland v. Martin*, 2018-Ohio-740, 107 N.E.3d 809, ¶ 14 (8th Dist.). A court analyzes "'the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Kalish* at ¶ 19, quoting *Dedejczyk* at ¶ 29.

{¶ 32} In determining whether an officer had a reasonable, articulable suspicion that a driver was operating a vehicle under the influence to support the administration of field sobriety tests, courts generally consider a number of factors, including, but not limited to:

> (1) the time of day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong,["] "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of

coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*State v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998), fn. 2; *see also State v. Waters*, 8th Dist. Cuyahoga No. 110821, 2022-Ohio-2667, ¶ 25. Factors are not viewed "'in isolation,'" *State v. Carpenter*, 3d Dist. Auglaize No. 2-22-20, 2023-Ohio-1702, ¶ 8, quoting *State v. Null*, 3d Dist. Logan No. 8-19-50, 2020-Ohio-3222, ¶ 19, and no single factor is determinative. *Evans* at 63, fn. 2; *see also Dedejczyk* at ¶ 31 (explaining that such factors are "merely assistive guides in the determination of reasonable suspicion" because "no one factor is dispositive" and "the list does not represent an exhaustive account of factors that can or should be considered"), citing *State v. Boczar*, 11th Dist. Ashtabula No. 2004-A-0063, 2005-Ohio-6910, ¶ 14. Courts generally find a reasonable suspicion exists to support the administration of field sobriety tests only where the officer based his or her decision on a number of factors, *Evans* at 63; however, "there is no 'magic' number of factors required to be present to justify administering field sobriety tests." *State v. Reynolds*, 11th Dist. Lake Nos. 2022-L-092 and 2022-L-095, 2023-Ohio-2030, ¶ 3, 31. As the Sixth District has explained:

> It is often a close issue whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests. *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, * * * ¶ 16. Such decisions are "very fact-intensive." *Athens v. Burkhart*, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 15 (4th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the

basis for opposite outcomes. *State v. Watkins*, 2021-Ohio-1443, 170 N.E.3d 549, ¶ 26 (6th Dist.).

*State v. Martorana*, 6th Dist. Sandusky No. S-22-011, 2023-Ohio-662, ¶ 34.

{¶ 33} Perotti contends that, although there was some evidence of alcohol consumption, the record does not support the trial court's finding that Perotti told Shoemaker he had been "coming from a bar" — i.e., that that statement was not captured on the body camera video — and that Shoemaker otherwise lacked evidence that would lead to a reasonable suspicion that Perotti was impaired prior to conducting the field sobriety tests. Perotti points out that "'it is not illegal to consume and then operate a motor vehicle'" and that "'[o]nly if the driver's ability to operate the vehicle is appreciably impaired * * * does a person violate the law,'" quoting *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, ¶ 13. He contends that an "odor of alcohol" is evidence of consumption not intoxication and that red, glossy eyes are not necessarily evidence of impairment, particularly when observed "sometime after midnight."

{¶ 34} With respect to Perotti's claim that the record did not support the trial court's finding that Perotti had come from a bar, review of the body camera footage reveals that, as Shoemaker was leading Perotti to the back of his police cruiser, he asked Perotti, "What are you doing over here?" Perotti responded, "I stopped on the way back from the," but the remainder of his statement trails off and is not clearly captured on the audio of the body camera video. Shoemaker testified that he believed Perotti had stated that he had "come from a bar" before he and Perotti

walked back to his cruiser. He indicated the microphone of the body camera may have been stopped "via me pulling my pen in and out" but that he specifically recalled Perotti "stating at some point that he came from a bar." We cannot say, based on the record before us, that Shoemaker's testimony was so incredible that it could not have been reasonably believed and that the trial court's finding that Perotti had stated he had come from a bar was not supported by competent, credible evidence.

{¶ 35} The city's burden to demonstrate a reasonable, articulable suspicion of driving while under the influence of alcohol is "not a high one." *Martin*, 2018-Ohio-740, 107 N.E.3d 809, at ¶ 16. While Perotti argues that there were numerous indicators of impairment that were not present here, such as erratic driving, slurred speech, lack of physical coordination or refusal to comply with police commands, "not every OVI case is going to have the same indicators of impairment, which is why the totality of the circumstances must be considered." *Carpenter*, 2023-Ohio-1702, at ¶ 17.

{¶ 36} Considering the totality of the circumstances, we agree with the trial court that Shoemaker's administration of field sobriety tests was supported by a reasonable suspicion, based upon articulable facts, that Perotti had been driving impaired.

{¶ 37} Police officers are not "required to obtain evidence demonstrating overt intoxication, such as slurred speech or stumbling, sloppy behaviors, in order to justify the administration of field sobriety tests." *Martin* at ¶ 19. Further, "[n]ot

every case will involve overt signs of intoxication or violations of the traffic laws, and we cannot create such a requirement before the field sobriety tests are deemed constitutionally valid." *Id.* at ¶ 20, citing *Chagrin Falls v. Bloom*, 8th Dist. Cuyahoga No. 101686, 2015-Ohio-2264, ¶ 9. Likewise, "'"[a] determination that reasonable suspicion exists * * * need not rule out the possibility of innocent conduct."'" *State v. Ramos*, 3d Dist. Marion No. 9-21-32, 2022-Ohio-886, ¶ 29 (observations that defendant's eyes were bloodshot, that he was talkative and that his movements were erratic and "herky-jerky" "[i]n conjunction with everything else" known to the officer at the time, warranted the officer in expanding the scope of the encounter with defendant to investigate whether he was driving under the influence of an intoxicant "even if there were some noncriminal explanation for [the defendant's] behavior, such as that he was tired after having been awake for 30 hours"), quoting *Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, at ¶ 22, quoting *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

{¶ 38} In support of his position, Perotti cites several cases that he contends are analogous to this case, in which courts held that the facts did not support a finding of reasonable suspicion. However, each of these cases is distinguishable from this case. *See State v. Stricklin*, 6th Dist. Lucas No. L-10-1277, 2012-Ohio-1877, ¶ 12 ("Traffic violations of a de minimis nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed a 'couple' beers, are not sufficient to support a reasonable and articulable suspicion of DUI."); *State v. Swartz,* 2d Dist. Miami No. 2008 CA 31, 2009-Ohio-902, ¶ 16 ("A de minimis traffic

violation, coupled with glassy, bloodshot eyes and an unspecified odor of alcohol is insufficient justification to conduct field sobriety tests."); *State v. Reed*, 7th Dist. Belmont No. 05 BE 31, 2006-Ohio-7075, ¶ 10-27 ("slight smell of alcohol," "red glassy eyes" and admission of drinking two beers was insufficient to detain defendant to conduct field sobriety tests where officer did not witness a moving violation or erratic driving, defendant was "cooperative" and "his speech was good"); *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 Ohio App. LEXIS 1151, 7-9 (Mar. 24, 2000) (de minimis traffic violations combined with a "slight" odor of alcohol and an admission to having consumed "a couple" of beers, was insufficient to support a reasonable suspicion of driving under the influence, in the absence of evidence of any other indicia of impairment, such as bloodshot eyes or slurred speech).

{¶ 39} Here, several factors supported Shoemaker's decision to administer field sobriety tests. Perotti was stopped on a late Saturday evening/early Sunday morning after leaving a bar. Perotti admitted to having consumed alcohol before driving. Shoemaker testified that Perotti was acting strangely, i.e., that he could not provide a "clear answer" as to why he was in the vicinity and seemed confused about his whereabouts, that he smelled a "stronger odor" of alcohol on Perotti's breath and that he observed Perotti's eyes to be "red" and "glossy." Perotti's discombobulation and red, glossy eyes can be seen on the body camera footage admitted into evidence at the suppression hearing. The video also shows Perotti fumbling around as he attempts to locate his identification in response to the officer's request. Although Shoemaker acknowledged that he did not observe any signs of erratic driving,

speeding or weaving when following Perotti, he had observed Perotti's driving for "just a block," for "five seconds or so," before pulling him over. Perotti's vehicle was stopped in connection with the investigation of the 911 call, not because Shoemaker had observed a violation of traffic laws or had a concern that he might be driving impaired.

{¶ 40} The totality of the articulable facts and circumstances was sufficient to support a reasonable suspicion that Perotti had been driving impaired.

**Probable Cause to Arrest for OVI**

{¶ 41} Perotti also contends that the trial court erred in concluding that Shoemaker had probable cause to arrest him for OVI.

{¶ 42} Probable cause to arrest exists when an officer is aware of facts that and circumstances, based on reasonably trustworthy information, that would lead a prudent person to believe that the suspect had committed or was committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). In assessing whether an officer had probable cause to arrest for OVI, a court must determine whether, "'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *Hyppolite*, 2016-Ohio-7399, 76 N.E.2d 539, at ¶ 57, quoting *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds*. A probable cause determination is based

on the totality of facts and circumstances within the knowledge of the police officer. *Goodman*, 2022-Ohio-3045, at ¶ 25.

{¶ 43} Perotti argues that the "only evidence supporting the finding of probable cause" was the results of the field sobriety tests and that, if there was no reasonable suspicion to perform the field sobriety tests, "it stands to reason that the same evidence could not support the higher finding of probable cause." We disagree.

{¶ 44} Upon review of the record, we find that at the time of Perotti's arrest, Shoemaker had sufficient facts — based on his own observations —  to cause a prudent person to believe that Perotti had been driving under the influence of alcohol.  As detailed above, Shoemaker observed Perotti driving the Buick.  He detected a strong odor of alcohol on Perotti's breath and observed his red, glossy eyes.  Perotti admitted consuming alcohol, admitted to coming from a bar and seemed confused regarding his whereabouts.  During the field sobriety tests administered by Shoemaker, Perotti exhibited five indicators of impairment during the walk-and-turn test and failed to raise his foot off the ground during the one-leg-stand test.  On this record, Shoemaker had probable cause to arrest Perotti. *See, e.g., Tallmadge v. McCoy*, 96 Ohio App.3d 604, 610, 645 N.E.2d 802 (9th Dist.1994) ("When an officer, after a lawful stop, observes that the driver has glassy, bloodshot eyes, a strong odor of alcohol on his breath, and is able to perform physical coordination tests only poorly, probable cause exists both for the detention for inquiry and the subsequent arrest for driving under the influence of alcohol."),

citing *State v. Williams*, 83 Ohio App.3d 536, 539, 615 N.E.2d 317 (3d Dist.1992) ("When an officer, upon lawfully stopping an automobile driver, observes that the driver has glassy, bloodshot eyes, the odor of an alcoholic beverage on his breath, and is able to perform physical coordination tests only poorly, probable cause exists both for the detention for inquiry and the subsequent arrest of that driver for driving under the influence of alcohol, R.C. 4511.19(A)(1), and to thereafter administer a lawful BAC test to the driver to determine whether a violation of R.C. 4511.19(A)(3) has also occurred."); *State v. Carroll*, 7th Dist. Columbiana No. 95-C-9, 1996 Ohio App. LEXIS 2464, 6-7 (June 13, 1996) (holding that there was probable cause to arrest defendant for driving while under the influence of alcohol where officer testified that he could smell a strong odor of alcohol on defendant's breath, that defendant's eyes were bloodshot and glassy and that the defendant failed two out of three field sobriety tests); *see also State v. Farey*, 2018-Ohio-1466, 110 N.E.3d 960, ¶ 34 (5th Dist.) (it was not necessary for officer to observe poor driving performance in order to place appellant under arrest for driving under the influence "when all the facts and circumstances lead to the conclusion that appellant was impaired").

{¶ 45} Based on the totality of the facts and circumstances of this case, the trial court did not err in denying Perotti's motion to suppress. Perotti's assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Parma Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR